UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| DONALD COOK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) 3:12-cv-00003-RLY-WGH |
| | ) |
| DEACONESS HEATH SYSTEM, INC. | ) |
| EMPLOYEE HEALTH BENEFIT PLAN, | ) |
| | ) |
| Defendant. | ) |

**ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT and PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Donald Cook, suffers from morbid obesity. In 1984, Plaintiff underwent a Vertical Banded Gastroplasty during which a band was placed around his stomach. In 2011, Plaintiff made a pre-service request to Anthem Insurance Companies, Inc. ("Anthem"), the Plan Administrator of the Deaconess Health Systems, Inc. Employee Health Benefit Plan ("Plan") that insures both he and his wife. Anthem denied the request under the Plan's exclusion for "[r]epeat surgical procedures for the treatment of Morbid Obesity." Plaintiff appealed the decision and lost. Plaintiff thereafter filed the present action for enforcement of his rights under the terms of the Plan pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B).

Both parties now move for summary judgment. The court, having read and reviewed the supporting and opposing briefs, the designated evidence, and the applicable law, now **GRANTS** Defendants' motion and **DENIES** Plaintiff's motion.

I.  Background

    A.  The Plan

The Plan's Health Benefit Booklet explicitly set forth what services were and were not covered. With respect to Morbid Obesity, the Booklet provided that weight-loss surgery was covered under the Plan if three circumstances were met: (1) the Covered Person met the definition of Morbid Obesity under the Plan; (2) the Covered Person tried multiple diets in at least 12 months before considering surgery, and has devised a diet history substantiating unsuccessful attempts at sustainable weight loss; and (3) the Covered Person passes a preoperative mental health screening. (Defendant's Ex. 1[1] at 47). The Booklet also provided, in relevant part, that "[r]epeat surgical procedures for the treatment of Morbid Obesity, regardless of Covered Person's membership in Plan at the time of preceding procedure" were not covered under the Plan. (*Id.*).

The Plan provided Anthem, as Plan Administrator, full discretionary authority to determine the administration of Plaintiff's benefits, including "the power to determine all questions arising under the Plan." (*Id*. at 83). According to the Booklet, "Anthem's determination shall be final and conclusive . . . ." (*Id.*).

    B.  Plaintiff

In 1984, Plaintiff underwent a Vertical Banded Gastroplasty surgical procedure for his morbid obesity. In July 2011, Plaintiff sought pre-certification for a Roux – En Y

---

[1] The evidence in this case comprises of the administrative record, submitted by Defendant as Exhibit 1. The Booklet is included in the record.

Gastric Bypass.  (*Id*. at 88).  On July 7, 2011, this request was denied in a letter that reads:

> Based on the review of the information provided to us, and your health benefit plan, we have determined the service referenced above is not eligible for coverage.  Your plan has certain limitations and exclusions, and one or more of those apply in this case.  Denial for this service is based on Benefits Contract Exclusion.

(*Id.* at 101).

Following an exchange of several letters between Plaintiff's counsel and Anthem, Plaintiff initiated a first level appeal, which was received by Anthem on November 25, 2011.  (*Id*. at 119, 131).  On December 25, 2011, Anthem advised Plaintiff that the previous denial was being upheld because the requested service was "considered a benefit exclusion as defined in the Morbid Obesity section of the Deaconess Health Systems description of benefits booklet."  (*Id*. at 145-47).  Anthem further advised Plaintiff that Anthem's Physician Consultant, who is Board Certified and specializes in General Surgery, determined that the "request for coverage of a weight loss surgical procedure, (gastric bypass), for morbid obesity cannot be approved" because Plaintiff "had a surgical procedure, (vertical banded gastroplasty), for morbid obesity in the past" and his "member contract contains has [sic] an exclusion for repeat surgical procedures for morbid obesity.  Therefore, the request is not a covered benefit."  (*Id*. at 146).  Anthem further provided information regarding the process for filing a second level appeal.  (*Id*. at 146-47).

Plaintiff did not file a second level appeal or pursue an External Appeal.  Instead, Plaintiff filed the present lawsuit on January 3, 2012.

3

## II.     Standard of Review

Summary judgment is appropriate if the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). With cross motions, the court's review of the evidence requires it to "construe all inferences in favor of the party against whom the motion under consideration is made." *Williams v. Aetna Life Ins. Co.*, 509 F.3d 317, 321 (7th Cir. 2007) (internal quotation marks and citations omitted).

The Plan afforded Anthem, as plan administrator, the sole discretion to interpret the terms of the plan. Accordingly, the court reviews Anthem's decision under the arbitrary and capricious standard of review. *Id.* (citing *Hackett v. Xerox Corp. Long-Term Disab. Income*, 315 F.3d 771, 773 (7th Cir. 2003)). Under that standard, Anthem's decision to deny Plaintiff benefits will be overturned only if it is "downright unreasonable." *Id.* (internal quotation marks and citation omitted). Stated differently, the court "will uphold the plan's decision 'as long as (1) it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, (2) the decision is based on a reasonable explanation of relevant plan documents, or (3) the administrator has based its decision on a consideration of the relevant factors that encompass the important aspects of the problem.'" *Id.* (quoting *Sisto v. Ameritech Sickness & Accident Disability Benefit Plan*, 429 F.3d 698, 700 (7th Cir. 2005)).

## III.    Discussion

Plaintiff argues that Anthem's decision to deny pre-certification for gastric bypass surgery is arbitrary and capricious for three primary reasons. First, Plaintiff argues that

4

the language of the Plan excludes only "repeat surgical procedures," not repeat surgeries that are different in kind.  In this way, Plaintiff interprets the phrase "repeat surgical procedure" to mean a subsequent surgery that is exactly like the previous.  Thus, according to Plaintiff, because he is seeking coverage for a *different* procedure, he is not seeking a "repeat surgical procedure" and the exclusion does not apply.  In the alternative, Plaintiff argues that the phrase "repeat surgical procedure" is ambiguous, and must be construed in his favor.

      Plaintiff's first two arguments ignore the fact that the Plan provided Anthem, as the Plan Administrator, the sole discretion to determine benefits eligibility and to interpret the Policy's terms.  ( Defendant's Ex. 1 at 83) ("Anthem has complete discretion to interpret the Benefit Booklet.  Anthem's determination shall be final and conclusive.").  The issue before the court, then, is not whether Plaintiff's interpretation was correct; the issue is whether Anthem's interpretation of "repeat surgical procedure" was "downright unreasonable."  *Williams*, 509 F.3d at 321; *Hess v. Reg-Ellen Machine Tool Corp.*, 423 F.3d 653, 658 (7th Cir. 2005) ("[W]hether or not we would have reached the same conclusion is irrelevant; we will overturn the fiduciary's denial of benefits only if it is 'completely unreasonable.'") (quoting *Ruiz v. Cont'l Cas. Co*., 400 F.3d 986, 991 (7th Cir. 2005))).  This is true even if, as Plaintiff suggests, the exclusion is ambiguous.  *Id.* at 662 ("The requirement that we give deference to the plan administrator's interpretation is especially applicable when the plan language is ambiguous, for that is precisely when the administrator exercises his grant of discretion.").

The Policy exclusion at issue does not employ any words from which a reasonable person could conclude that the procedure sought for pre-certification must be the exact same procedure the plan participant previously had. Thus, Anthem's interpretation of the exclusion as meaning a second surgery for the treatment of morbid obesity is not contrary to the plain meaning of the phrase "repeat surgical procedures" and is, in fact, reasonable.

Plaintiff also argues that Anthem's decision to deny pre-certification was arbitrary and capricious because Anthem's notification of the adverse determination was deficient. In support of this argument, Plaintiff relies on the regulations enacted pursuant to ERISA Section 503, 29 U.S.C. § 1133, that govern the content of the plan administrator's notice to a claimant regarding a denial of benefits. In short, these regulations require the plan administrator's notice to contain: (1) the specific reason or reasons for the denial; (2) reference to the specific plan provisions on which the denial is based; (3) a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; and (4) a description of the plan's review procedures and the time limits applicable to such procedures. 29 C.F.R. §2560.503-1(g)(i)-(iv).

Anthem's initial denial was cursory, informing Plaintiff that his claim was denied due to an exclusion in the Plan. (Defendant's Ex. 1 at 101 ("Denial for this service is based on Benefits Contract Exclusion.")). As noted by Plaintiff, the initial denial did not inform Plaintiff of the *specific* reason for the denial, nor reference the specific plan exclusion that formed the basis of its decision. The notice did, however, inform Plaintiff

of his right to an appeal, the process for an appeal, and the right to an independent external review. (*Id.* at 119, 125-26).

After receiving the notice of denial, Plaintiff contacted his provider, who informed him that "Anthem denied coverage because it believed that this was a repeat surgical procedure." (*Id.* at 131). Plaintiff, by counsel, then initiated a first level appeal, the contents of which reflect that Plaintiff understood the reasons for the denial of his claim. The letter argued that the procedure for which Plaintiff sought pre-certification was not the same surgical procedure he had previously and was not, given the plain definition of "repeat," a "repeat surgical procedure." (*Id.*).

The regulations cited above "are designed to afford a beneficiary an explanation of the denial of benefits that is adequate to ensure meaningful review of that denial." *Halpin v. W.W. Grainger*, 962 F.2d 685, 689 (7th Cir. 1992). The arguments Plaintiff raised in his level one appeal are essentially the same arguments raised here. The court therefore concludes that Anthem's failure to technically comply with the regulation's procedural requirements "did not cause harm to [Plaintiff] or otherwise undermine the fairness and thoroughness of the review of his case." *See Reimann v. Anthem Ins. Co., Inc.*, 2008 U.S. Dist. LEXIS 88562, at *92 (S.D. Ind. Oct. 31, 2008) (finding insurer's procedural errors did not prejudice plaintiff, and, therefore, did not "call for a remedy that would require [the insurer] to cover the costs of the proposed transplant surgery").

Lastly, Plaintiff attacks the information provided by Anthem in its denial of his first level appeal. Plaintiff argues that Anthem failed to explain why Plaintiff's interpretation of "repeat surgical procedure" was incorrect, and failed to take into account

the differences in the procedures Plaintiff had undergone in 1984 (lap band), and the one for which he sought pre-certification (gastric bypass). Plaintiff contends Anthem's failure to address this key evidence constitutes an absence of reasoning.

Anthem did not fail to consider evidence; it rejected Plaintiff's interpretation of the Plan and his arguments in support of coverage. Anthem's reasoning is implicit in its denial letter – because Plaintiff had a surgical procedure for the treatment of morbid obesity in the past, he is not eligible for one now per the Plan's exclusion. (*See* Defendant's Ex. 1 at 146). In sum, Anthem's letter articulated a rational and reasonable basis to deny coverage based upon the terms of the Plan, and did not impermissibly fail to consider evidence. The court therefore concludes that Anthem's decision to deny Plaintiff's request for pre-certification for a Roux – En Y Gastric Bypass was not arbitrary and capricious.

## IV. Conclusion

Anthem's Motion for Summary Judgment (Docket # 26) is therefore **GRANTED**, and Plaintiff's Cross-Motion for Summary Judgment (Docket # 31) is **DENIED**.

**SO ORDERED** this 25th day of March 2013.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.